IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

BOVI LAMONTE COMBS,

                    Petitioner,

          vs.                              **Case No. 06-3342-RDR**

A. DAVID ROBINSON, Warden,
Wallens Ridge State Prison;
and ATTORNEY GENERAL OF THE
STATE OF VIRGINIA,

                    Respondents.
────────────────────────────────

**MEMORANDUM AND ORDER**

I.  INTRODUCTION

This case is before the court upon petitioner's request for
habeas relief pursuant to 28 U.S.C. § 2254.  Petitioner was
convicted of first degree murder, aggravated kidnapping, and
conspiracy to commit first degree murder after a jury trial in
the District Court for Wyandotte County, Kansas.  He was
sentenced to a "Hard 50" life sentence, plus 59 months
imprisonment.  He is currently serving this sentence in
Virginia.

II.  PETITIONER'S ARGUMENTS

Petitioner makes two arguments for relief.  Both arguments
concern his questioning by investigative officers.  First, he
contends that he was not given a <u>Miranda</u> warning prior to
custodial interrogation and, therefore, all evidence obtained

from the questioning should have been suppressed.  Second, he contends that he was subjected to intimidation and coercion during the questioning and that this resulted in an involuntary confession.  Petitioner contends that he was interrogated for nine hours in a cold room, subjected to threats of choking and head-butting, intimidated by references to the death penalty, and told that the interrogating officer was the only person who could do something for petitioner.  Petitioner also asserts that he requested an attorney, but his request was denied.

III.  FACTUAL BACKGROUND

Petitioner was charged, along with Shecora Clanton and Andrew Jackson, with the murder of Delesha Williams.  There was evidence at trial that Clanton was petitioner's girlfriend. Petitioner and Clanton had become acquainted with Jackson. Petitioner believed that Delesha Williams was involved in the death of his sister.  Petitioner decided to kill Delesha Williams and steal her big screen television and other property. Clanton and Jackson agreed to help petitioner.

Clanton rented a U-Haul truck with petitioner's money. Petitioner, Clanton and Jackson rode in the truck to Williams' home.  They spent time there with Williams, eating and watching television.  Williams decided to go to bed but told her visitors that they could spend the night if they wished.

2

After Williams went to sleep, petitioner and Jackson attacked her.  They struck her with a rubber mallet, attempted to poison her with a syringe, attempted to choke and strangle her, and stabbed her with two knives.  When Williams appeared dead, petitioner, Jackson and Clanton loaded the big screen television and other property into the U-Haul truck and also loaded Williams into the back of the truck.  Petitioner and Clanton dropped Jackson off at his home and continued to drive. All of these events occurred in Kansas City, Missouri. Petitioner and Clanton heard Williams scream.  They decided to drive to Kansas City, Kansas and dump Williams' body in a wooded area.  They removed her body from the truck, ran over the body with the truck four times, and then dragged the body down a hill into the woods.  There was testimony that although Williams suffered many injuries, the fatal injuries were caused by being run over by the truck.

Petitioner and Clanton were brought in for questioning by Kansas City, Missouri police before Williams' body was discovered.  While they were being questioned, the body was discovered by Kansas City, Kansas police.

Clanton testified against petitioner.  A confession from petitioner was introduced against him.  Petitioner testified at his trial.  He blamed Jackson for attacking Williams at her home

3

in Missouri and blamed Clanton for running over Williams with the truck in Kansas.

To repeat, petitioner was picked up by police and driven to a Kansas City, Missouri police station the morning of the murder.  Petitioner was questioned by Detective Brian Bell beginning at approximately 11:30 a.m.  At that time, Williams' body had not yet been found.  Shecora Clanton was being questioned at the station at the same time in a different room.

A Miranda warning was read by petitioner and a written waiver of Miranda rights was signed by him at approximately 1:21 p.m.  A videotaped statement or confession was given by petitioner starting at 7:45 p.m and ending at approximately 8:45 p.m.

A pretrial hearing regarding a motion to suppress the confession was conducted.  Detective Bell testified at the hearing.  The state court judge found at that time that, based on the totality of the circumstances, petitioner's confession was voluntarily and knowingly given without any fraud, duress or coercion.  The court considered petitioner's mental condition, the manner and length of the question, the ability of petitioner to cease and desist at any time, his ability to communicate with anyone else, his age, background and responses to the questions asked, and the demeanor and fairness of the officers conducting

the interrogation.

Evidence regarding petitioner's confession and interrogation was taken during petitioner's trial.  An objection was made to the introduction of the confession.  That objection was overruled.

The Kansas Supreme Court reviewed and affirmed the admission of the confession on direct appeal.  The court explained the ruling in part as follows:

> The trial court's denial of Combs' motion to suppress indicates it did not believe Comb's testimony regarding his request for an attorney.  With no objection to inadequate factual findings, the trial court is presumed to have made all necessary factual findings to support its judgment.  Gilkey v. State, 31 Kan.App.2d 77, 77-78, 60 P.3d 351, rev. denied 275 Kan. 963 (2003).  Detective Bell's testimony is substantial competent evidence to support the trial court's implied finding.  Such implied findings regarding the lack of an attorney request and supported by substantial competent evidence will not be overturned on appeal.  See Hill v. Farm Bur. Mut. Ins. Co., 263 Kan. 703, 706, 952 P.2d 1286 (1998).
>
> Combs next attacks the admission of his confession, claiming it was involuntary due to Detective Bell's threats and promises.  Combs' principal argument that his confession was involuntary involves his contentions that Detective Bell physically threatened him with choking and head-butting.  The videotape was reviewed by the court and the jury, and it was clear Combs was at times irritating and difficult. As to Combs' complaint concerning the comment by Detective Bell about choking him, Combs admitted in his own testimony that it was made in the hallway after the videotaped statement had been completed.  Clearly, this statement, made to another law enforcement officer, could not have had any effect on Combs' earlier statement and the

5

interrogations.

However, Combs testified the statement about being head-butted occurred when he first met Detective Bell. This testimony is directly contradicted by Detective Bell's testimony that he did become frustrated after several hours of interrogation and admitted he may have made a statement to Combs that he could head-butt him. There is no evidence that he did commit the act of head-butting. The trial judge hearing the motion to suppress did not make a specific finding concerning this allegation, but the conclusion that the confession was voluntary carries with it the implication that Combs was not adversely affected by Detective Bell's frustration. The trial court heard the witnesses and evaluated their credibility, and we find no reversible error.

Combs further complains Detective Bell's statement that he could receive the death penalty was a coercive threat. Combs claims the implication of this statement was that he could avoid the death penalty if he said what Detective Bell wanted to hear. Detective Bell admitted that after Williams' body had been found, he may have told Combs that he could be facing the death penalty, but such a statement was only an attempt to get Combs to be truthful with him. We have declined to find a confession to be involuntary when the police encourage a defendant to tell the truth. State v. Newfield, 229 Kan. 347, 359, 623 P.2d 1349 (1981).

Detective Bell admitted he told Combs that only he could "help" him but said this came in response to a rambling statement by Combs about praying to God and Jesus, and Detective Bell said, "[N]either God or Jesus can help ... I was the one that could help him." Detective Bell denied making deals with Combs or promising leniency and said he told Combs that "truth and honesty from him would be better than-than the lies that he was providing at that point." None of this conversation or these statements negatively impact the findings of voluntariness of Combs' confession. See Waugh, 238 Kan. at 540-41, 712 P.2d 1243.

Our evaluation of the voluntariness of Combs' confession requires us to look at the totality of the circumstances using the factors we have previously set forth.  See White, 275 Kan. at 597, 67 P.3d 138.

We first look at the duration and manner of the interrogation and find it was not excessive or improper considering all the facts and circumstances. Discussion of the crime did not commence until after 1:30 p.m. Detective Bell left the room numerous times because information was constantly being received from Clanton's interrogation.  Once Williams' body was discovered, the seriousness of the charges escalated.

The evidence showed Clanton's videotaped statement was taken about 6 p.m., and Detective Bell was involved there and not questioning Combs in that time frame.  There were two crime scenes; over 350 exhibits were ultimately admitted in the trial of the case. Combs' statement followed Clanton's and began about 7:45 p.m. and ended around 8:45 p.m.

Combs complained the interview room was purposely cold, but Detective Bell testified the police station is an old building, making regulation of temperature difficult.  Combs was offered food but only requested and received two cups of water.  Combs was not handcuffed or shackled during the interrogation and was allowed to take breaks to use the bathroom. The duration of Combs' interrogation was not excessive. See State v. Brown, 258 Kan. 374, 394-95, 904 P.2d 985 (1995).

Combs does not claim he was denied the right to outside communication except for his claim that he was not allowed access to an attorney. This contention was factually resolved against him in the trial court's findings on the motion to suppress. The trial court's finding that Combs was not denied access to an attorney was supported by substantial competent evidence. The factor of outside communications does not weigh in favor of finding the confession to be involuntary.

Combs makes no effective argument that his confession was involuntary because of his age or a

mental defect, such as inexperience with police investigations. The record reflects these factors did not negatively affect the finding of voluntariness. Combs was 29 years old when interrogated and had been convicted of five previous felonies in Missouri, showing he was familiar with the criminal justice system.  He made no claim to be under any disability. These factors do not support his claim of involuntariness.

The trial court did not find the officers to be unfair in conducting the interrogation. It was acknowledged by the trial court that Detective Bell did become frustrated and angry with Combs but concluded the behavior was not threatening. An interrogation in a murder investigation is not a social event, and we follow the trial court's findings and conclude Combs' confession was not involuntary.

There was other evidence to support the conclusion that Combs' statement to Detective Bell was voluntary. During a break in the interrogation, Combs wrote a note to Clanton. Police discovered the note before the videotaped statement began.  The note was on a piece of paper that had been torn into pieces and thrown into the trash can in the interrogation room. In the note, Combs asked Clanton to tell the truth and told her he had told the police the "truth."  He specifically wrote, "I've told Brian everything I could possibly think of."

We hold there was substantial evidence to support the trial court's findings of voluntariness.  The trial court resolved all of the disputed evidence, and we accept the trial court's findings on those matters. We do not endorse all of Detective Bell's actions, but applying the required factors and looking at the totality of the circumstances, we affirm the findings and conclusion that Combs' confession was voluntarily given. We also point out that the substantial and overwhelming evidence substantiating the convictions is consistent with and follows the statements given by Combs in his confession.  This issue is clearly not one which justifies reversal of the trial court's

rulings.

State v. Combs, 118 P.3d 1259, 1264-66 (Kan. 2005).

   IV.   HABEAS STANDARDS

   A writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial."   28 U.S.C. § 2254(d)(1)&(2).   State court factual findings are presumed correct, absent clear and convincing evidence to the contrary.   28 U.S.C. § 2254(e)(1).

   The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."   Williams v. Taylor, 529 U.S. 362, 405-06 (2000).   A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."   Id. at 413.

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that – – (A) the claim relies on – – (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

V.   PETITIONER'S <u>MIRANDA</u> CONTENTION

Petitioner asserts that he was denied his constitutional rights to counsel because he was interrogated while in custody without receiving a <u>Miranda</u> warning.

The evidence in petitioner's case indicates that he was driven by law enforcement officers to a Kansas City, Missouri police station and was questioned by Detective Brian Bell beginning at approximately 11:30 a.m. on June 4, 2001.   No <u>Miranda</u> warning was given until 1:21 p.m. on the same day. Petitioner eventually gave a videotaped statement at approximately 7:45 p.m.  During the period between the <u>Miranda</u> warning and the beginning of the videotaped statement, approximately six hours, defendant was interrogated for four

10

hours, according to Detective Bell.  The videotaped statement concluded at about 8:45 p.m.  Part of the videotaped statement was made in response to questions by Detective Karen Jenkins. The majority of the videotaped statement was made in response to questions by Detective Bell.  Petitioner read the <u>Miranda</u> warning aloud and signed a written waiver.  Detective Bell testified that prior to receiving the <u>Miranda</u> warning, petitioner was asked non-accusatory questions.  Bell stated that pre-<u>Miranda</u> he attempted to elicit background information about petitioner and his relationship with Shecora Clanton and Delesha Williams.  According to Bell, petitioner was alone in the interrogation room for approximately an hour before the <u>Miranda</u> warning was given.  Bell stated that he decided to give the <u>Miranda</u> warning before asking about petitioner's involvement in the disappearance or death of Delesha Williams.  Bell testified that petitioner never asked for an attorney.  Petitioner testified that he did ask for an attorney.  Bell also testified that there were absolutely no physical or verbal or psychological threats or coercion prior to the <u>Miranda</u> warning.

There is evidence in the record that petitioner was in custody when he was questioned by Detective Bell.  Tr. 1066. There is also evidence in the record that Detective Bell's pre-warning questions went beyond normal booking procedure

questioning and into the realm of developing evidence for the investigation.  Tr. 1047.  Petitioner makes no argument, however, that petitioner's responses to the pre-warning questions were used as evidence at the trial.

Petitioner does contend that all the statements obtained from petitioner following the pre-Miranda warning interrogation should be dismissed as "fruit of the poisonous tree."  It appears to the court that this argument requires an application of Oregon v. Elstad, 470 U.S. 298 (1985).  In Elstad, the Court held that the failure to give Miranda warnings, in the absence of other evidence of coercion or other circumstances calculated to undermine the suspect's free will, did not cause a subsequent voluntary and informed waiver to be ineffective.  The Court stated:

> A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.  In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314.  See also, U.S. v. Pettigrew, 468 F.3d 626 (10th Cir. 2006) cert. denied, 127 S.Ct. 1343 (2007) (discussing exceptions to the "fruits" doctrine in cases involving Miranda violations).

In this case, there was a significant lapse of time between

12

petitioner's pre-warning statements and the videotaped statement or "confession" which was introduced into evidence at his trial. There is no contention that the pre-warning statements amounted to a confession or were inculpatory in any way other than acknowledging that petitioner was acquainted with the victim and Shecora Clanton.  Nor is there any claim that the pre-warning questions were substantially the same as the post-warning questions.  While petitioner has alleged that he was coerced into making the confession, these allegations have been rejected by the state court judges who have reviewed the record.  We believe the prior rulings regarding the voluntary nature of petitioner's statements to Detective Bell - before and after the Miranda warning - are reasonable and supported by the record. This includes the finding that petitioner did not request an attorney either before or after the Miranda warning.

We find it reasonable to conclude that petitioner's post-warning statements were voluntary and uncoerced.  They were not a reiteration of pre-warning statements or a natural consequence of the pre-warning statements.  Nor was the pre-warning questioning a device to circumvent or undermine the Miranda warning.  Therefore, given the facts of this case and the reasoning in Elstad, we reject petitioner's first argument for relief.

13

VI.   PETITIONER'S INVOLUNTARY CONFESSION CONTENTION

As previously stated, petitioner is not entitled to relief on this claim unless this court is convinced that the state court's decision that his confession was voluntary was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).   In this instance, the court believes the State court made reasonable determinations of the law and the facts.

A confession is involuntary if the government's conduct "causes the defendant's will to be overborne and his capacity for self-determination critically impaired." Lucero v. Kirby, 133 F.3d 1299, 1311 (10th Cir.) cert. denied, 523 U.S. 1110 (1998) (interior quotations omitted).   A court must look at the "totality of circumstances" including the defendant's characteristics and the details of the interrogation to determine the voluntariness of a confession.   Id.   Relevant factors include:   age, intelligence and education of the defendant; the length of detention and questioning; the use or threat of physical punishment; when Miranda warnings have been given; the defendant's physical and mental characteristics; the

14

location of the interrogation; and the conduct of the police officers.  Id.; see also, Smith v. Mullin, 379 F.3d 919, 934 (10th Cir. 2004).

The state courts have analyzed the various circumstances at issue in determining the voluntariness of petitioner's confession.  The state courts found that Detective Bell was not threatening either in mentioning the possibility of the death penalty or in exhibiting frustration or anger via the head-butting comment.  The state courts found that Detective Bell was not unfair in conducting his interrogation or in encouraging petitioner to tell the truth and thereby allowing Bell to "help" him.  The state courts did not consider the length of the interrogation or the conditions of the room to be excessive or coercive.

Petitioner was not restrained or shackled during the interrogation.  He was 29 years old with a high school education.  He did not ask for food.  He was permitted water and bathroom breaks.

From the court's review of the record and other cases, we find that the state courts' findings as to the voluntary nature of the confession are objectively reasonable and, therefore, this court may not issue a writ of habeas corpus. See McCalvin v. Yukins, 444 F.3d 713, 720 (6th Cir.) cert. denied, 127 S.Ct.

15

510 (2006) (27-year-old woman held for eight or nine hours, interrogated for four hours, and told that she would not have contact with children if convicted of first-degree murder, does not justify habeas relief on claim of involuntary confession); U.S. v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir.) cert. denied, 534 U.S. 1031 (2001) (statement that defendant could receive life sentence not unduly coercive); U.S. v. Rutledge, 900 F.2d 1127, 1130 (7th Cir.) cert. denied, 498 U.S. 875 (1990) (not coercive to tell suspect under interrogation that his cooperation would be "helpful" to the suspect); U.S. v. Yunis, 859 F.2d 953 (D.C. Cir. 1988) (Fifth Amendment waiver voluntary in spite of overly hot room and other factors leading to discomfort); Smith v. McKee, 2007 WL 927527 (W.D.Mich. 2007) (physical and psychological abuse of petitioner by law enforcement authorities approximately 10 days before petitioner gave a post-Miranda confession did not warrant habeas relief on the grounds that admission of confession was objectively unreasonable).

VII.   CONCLUSION

In conclusion, for the above-stated reasons, the court shall deny the petition for relief under 28 U.S.C. § 2254.

**IT IS SO ORDERED.**

Dated this 16th day of May, 2007 at Topeka, Kansas.

16

s/Richard D. Rogers
United States District Judge